**TEAMSTERS LOCAL 623**

v.

**UNITED PARCEL SERVICE, INC.**

Civ. A. No. 91–5984.

United States District Court,
E.D. Pennsylvania.

March 17, 1992.

Richard H. Markowitz, Markowitz & Richman, Philadelphia, Pa., for plaintiff.

Gary M. Tocci, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff, Teamsters Local 623 ("Local 623"), brings this action pursuant to Section 301 of the Labor Management Relations Act, 1947, as amended, 29 U.S.C. § 185.[1] Local 623 alleges that the defendant, United Parcel Service, Inc. ("UPS"), is improperly seeking to re-arbitrate an issue which was decided in an earlier arbitration under a collective bargaining agree-

1. Section 301(a) of the Labor Management Relations Act, 1947, as amended, 29 U.S.C. § 185(a), states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting com-

merce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

ment ("Agreement") to which both Local 623 and UPS are parties. Local 623 asks this Court to stay the second arbitration and to "order the Defendant to comply with all of the terms of the agreement and the [first] arbitration award."[2]

Before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) provides the standard for ruling on a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.Rule Civ.P. 56(c). *See also, Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is well settled law that in deciding motions for summary judgment, the question to consider when determining if there is a "genuine issue of material fact" is whether there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir.1990). The evidence must be viewed in the light most favorable to the non-moving party. *Weldon* at 797.

In February, 1990, Harry Prince ("Prince"), a member of Local 623, filed a grievance pursuant to the Agreement. Prince is an over-the-road tractor-trailer driver, or "feeder driver," employed by UPS, who works four days per week, 10 hours per day, and has one scheduled day off per week.

In his grievance Prince alleged that UPS violated Article 47, Section 9 of the Agreement. That section of the Agreement, entitled "Extra Assignments," provides:

> Preference shall be given to employees in the order of their seniority to extra work available after the completion of their day's work, provided that such employees are available at such times as the work is assigned and are qualified to perform the work required. In no event may employees displace other employees who have not completed their assignment.

Prince alleges that on a day he was not scheduled to work a fellow UPS driver called in sick. Rather than calling Prince to work on his day off, UPS covered the absence with a driver from a different bargaining unit. Prince filed a grievance against UPS for its choice of driver, stating that under the terms of the Agreement, UPS should have offered the work to a driver from Local 623's bargaining unit, such as Prince.

Prior to the filing of the Prince grievance, Robert DeJoseph ("DeJoseph"), another Local 623 "feeder driver" employed by UPS, had filed a similar grievance. DeJoseph, like Prince, worked a four day, 10 hours a day schedule, with one day off during the week. The DeJoseph grievance arose out of a situation concerning a fellow UPS driver who had requested a day off. The driver requested the day off one week in advance, thus giving UPS time to plan how to cover the anticipated absence, that is, to decide what driver to call in to work. Although the anticipated absence was to occur on DeJoseph's scheduled day off, UPS brought in a driver from a different bargaining unit and did not offer the job to DeJoseph. Thereafter, DeJoseph filed a grievance against UPS alleging that the action of UPS violated the Agreement.

Both grievances proceeded through the proper dispute resolution channels which are provided for within the Agreement, and both were eventually submitted to arbitration. In March, 1991 the DeJoseph case was heard before Arbitrator Robert E. Light (AAA Case No. 14–300–1687–90–A). Arbitrator Light issued his decision on May

---

**2.** UPS complied with the first arbitration. The Court assumes that Local 623 wants the Court to compel UPS to recognize the holding of the first arbitration in any subsequent arbitration involving the same issue.

25, 1991, sustaining DeJoseph's grievance and awarding DeJoseph, as an individual, overtime pay for the work assignment in question.

The Prince arbitration is still pending. Arbitrator Jonas Aarons has heard one day of testimony in the case. During that first day there arose the question of the *res judicata* effect of Arbitrator Light's decision in the DeJoseph case.

Pursuant to Section 301 of the Labor Management Relations Act, 1947, Congress has assigned to the courts the duty of determining whether a particular matter is arbitrable under the applicable collective bargaining agreement. *John Wiley & Sons v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Local 103 of the International Union of Electrical, Radio and Machine Workers, AFL–CIO v. RCA Corporation,* 516 F.2d 1336, 1339 (3d Cir.1975); *see also, Butler Armco Independent Union v. Armco, Inc.,* 701 F.2d 253, 255 (3d Cir.1983). In order to ensure the maximum utilization of the arbitral process, the Supreme Court has held that, when a party is seeking to compel arbitration pursuant to Section 301, courts should resolve questions of arbitration by applying a strong presumption in favor of arbitrability. *United Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960).

There are strong reasons supporting the federal policy in favor of arbitration. The arbitrators are more suited than the courts to interpret labor contracts and to resolve contractual problems which occur between labor and management. The Supreme Court has also pointed out that the process of arbitration contributes to the maintenance of labor peace. *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

Arbitration is clearly the preferred method for resolving disputes between a union or an employee and the employer. The function of the courts in the administration of the arbitration process, integral to collective bargaining agreements, is very limited in scope. As the Court of Appeals of this Circuit has declared:

> We have ... admonished the courts "to exercise the utmost restraint and to tread gingerly before intruding upon the arbitral process. The basic philosophy underlying the court's 'hands-off' policy is very simple—labor matters are best left to those who understand the language and the workings of the shop, those who have a precise knowledge of what has come to be known as the 'industrial common law.' ..."

*Local 103* at 1340.

■ The threshold question before this Court, of course, is whether the subject of the Prince grievance is arbitrable under the Agreement. We hold that it is. As stated above, the Prince grievance alleges a violation of Article 47, Section 9 of the Agreement. Section 9 covers the issue of how UPS should assign work to employees who have completed their days work. *See,* Article 47, Section 9 *supra.* Both Local 623 and UPS agree that this subject is covered under the collective bargaining agreement. How the exact language of Section 9 should be interpreted is clearly a matter for the arbitrator.

■ The question then becomes whether the Court should enforce the doctrine of *res judicata* as to matters which are otherwise subject to the labor arbitration process under this collective bargaining agreement. An arbitrator is normally not bound to adhere to previous arbitration decisions which construe the same collective bargaining agreement, because such adherence would limit the flexibility of the arbitration process. *Metropolitan Edison Co. v. National Labor Relations Board,* 663 F.2d 478, 483 (3d Cir.1981), *aff'd,* 460 U.S. 693, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983). Local 623, however, argues that this case presents an exception to this general rule. It contends that where the collective bargaining agreement so provides, an arbitrator's decision on an issue will be binding on future arbitrators addressing that same issue. Article 46, Section 4 of the Agreement between Local 623 and UPS states in pertinent part:

The decision of the Arbitrator shall be final and binding on the parties and the employees involved. In the event that the losing party fails to abide by the Arbitrator's decision or that either party refuses to submit to his jurisdiction, the other party shall have the right to take all legal or economic recourse.

Local 623 argues that because an arbitrator's decision is "final and binding" under the Agreement, Arbitrator Light's decision in DeJoseph has *res judicata* effect in the Prince arbitration and therefore precludes Arbitrator Aarons from going forward to decide the Prince case. It relies on a statement made by the Court of Appeals for the Third Circuit in *Local 616, International Union of Electrical, Radio and Machine Workers, AFL–CIO v. Byrd Plastics, Inc.,* 428 F.2d 23, 26 (3d Cir.1970): [3]

> A clause stating that a decision of an arbitrator is "final and binding" is no doubt intended to establish a principle similar to that of *res judicata*, and to bar reconsideration of the disputes fully decided on the merits.

In *Byrd Plastics*, the arbitrator had dismissed the first arbitration on procedural grounds. When the arbitrator decided in favor of the employee on refiling, the union brought suit to enforce the award. The Court of Appeals held the second arbitration was not barred on the grounds of *res judicata*. Contrary to what Local 623 contends, *Byrd Plastics* never held that it was for the Court, as opposed to the arbitrator, to consider and apply the doctrine of *res judicata*.

The Court of Appeals for the Third Circuit addressed the issue presented here, in *Local 103*, decided after the *Byrd Plastics* decision. In *Local 103*, the union brought an action to enjoin the employer RCA Corporation from proceeding with the arbitration of a grievance, on the ground that a collective bargaining agreement provision barred re-arbitration of questions or issues that were previously the subject of arbitration. The agreement stated: "In no event ... shall the same question or issue be the subject of arbitration more than once." In that case the prior arbitration award was in favor of the union local. During a 1974 arbitration hearing, the union introduced into evidence a prior 1946 decision and award, contending that the latter grievance was entirely controlled by the prior decision. Just as in this case, the union sought to enjoin any further arbitration efforts on the part of RCA Corporation. The district court entered judgment against the union and remanded the case to the arbitrator. The Court of Appeals affirmed, stating:

> It is the function of the arbitrator, not the court, to decide whether the "same question or issue" had been the subject of arbitration within the meaning of the collective bargaining agreement. (Footnote omitted).

*Local 103* at 1339. The Court of Appeals went on to conclude that "it is for the arbitrator to value the relevance and effect of the [prior] arbitration award and opinion ..." *Local 103* at 1340.

The Court in *Local 103* further declared that its decision was not contrary to *Byrd Plastics*, cited by Local 623 here. The Court in *Local 103* correctly explained:

> There is no statement, explicit or implicit, in *Byrd Plastics* suggesting that the federal court should oust the arbitrator from interpreting or applying a re-arbitration provision of a collective bargaining agreement.

*Local 103* at 1341.

■ Since the issue raised in the Prince grievance is arbitrable, it falls to Arbitrator Aarons to evaluate Arbitrator Light's arbitration ruling in the DeJoseph case,

---

3. Other courts taking this position require that the two arbitrations share "strict factual identities." *See Trailways v. Trailways Joint Council,* 807 F.2d 1416, 1425 (8th Cir.1986) *reh'g denied en banc,* 817 F.2d 1333 (8th Cir.1987). DeJoseph and Prince evidence a material difference in factual situations. While Robert DeJoseph asserted that he was "available" and should have been called in to fill in for an absence planned for and of which the company was aware for one week, Harry Prince asserts the same rights to cover for an absence that opened due to unanticipated sickness on the same night as the night he claims UPS should have called him. Prince arguably presents a materially different factual scenario, because UPS did not have advance notice of the need for coverage, as it did in DeJoseph.

including its relevance and effect on the Prince case.

While it is for the Court to decide whether an issue is subject to arbitration under the collective bargaining agreement, it is for the arbitrator, and not the Court, to decide whether or not the collective bargaining agreement prohibits re-arbitration of a particular grievance or issue, otherwise subject to labor arbitration. *Local 103* at 1341. *See also, Butler Armco Independent Union v. Armco Inc.*, 701 F.2d 253, 255 (3d Cir.1983). Under Local 623's analysis, the courts would be drawn into a morass of labor contract interpretation issues. Courts, for example, would have to decide whether the second arbitration involves an identical or sufficiently similar issue to the first, and whether the parties are really the same. The courts might also have to consider such matters as changed conditions between the time of the first arbitration and the second. In some instances the courts would be drawn into elaborate fact finding. The arbitrator, familiar with the specific labor-management situation, is in a much better position to make such decisions. Allowing the issue of *res judicata,* which is really a contract interpretation issue in this context, to remain with the arbitrator, will promote the strong congressional policy in favor of arbitration of grievances under a collective bargaining agreement. *See, Local 103* at 1339.

Local 623 raises the specter of UPS' abuse of the arbitration mechanism in continually re-arbitrating the same issues, to the severe financial detriment of Local 623. We do not believe that this is the leviathan that Local 623 contends. First, Local 623 may argue the issue of *res judicata* to the arbitrator. We see no reason why an arbitrator, under normal circumstances, will not give weight to a previously decided arbitration involving the same or similar issues. Moreover, the issue of re-arbitration and *res judicata,* like many other issues, can be the subject of the collective bargaining process when the current Agreement expires.

Finally, we note that the arbitrator in this case has not yet completed hearing the Prince arbitration. It may be decided in the same way as the DeJoseph case. While concededly Local 623 will still have the expense and distraction of the second arbitration, it seems to controvert congressional policy to involve the courts in the labor grievance procedure at this stage, absent some truly extraordinary circumstances not present here.

The Motion of UPS for Summary Judgment will be granted, and the Motion of Local 623 for Summary Judgment will be denied.